IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK ANTHONY CLARK,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : | NO. 19-2235 |
| | : | |
| JOHN DOE-WALKER, *et al.*,<br>    Defendants. | : <br> : | |

## **MEMORANDUM OPINION**

**Schmehl, J.  /s/ JLS**                                                                    **February 5, 2020**

### I.     INTRODUCTION

Plaintiff filed a Complaint in this matter on May 22, 2019. After several defendants were dismissed from the case, Plaintiff's Complaint was served on Defendants Hawkins, Walker and Whiteside only. Plaintiff brings a cause of action pursuant to 42 U.S.C. § 1983 against these corrections officers, claiming that claiming that they subjected him to excessive force and sexual abuse during a cell search at Chester County Prison. Defendants have moved to dismiss Plaintiff's Complaint, and for the reasons that follow, I will deny Defendants' motion.

### II.    FACTS

Plaintiff alleges that the events in his Complaint occurred while he was confined at Chester County Prison. Plaintiff's Complaint does not specifically allege that he was a pretrial detainee at the time of the events in question, but a review of his state court docket entries shows that he pled guilty in the Chester County Court of Common Pleas on September 6, 2018. As the events in question occurred in July of 2018, it is evident that Plaintiff was a pretrial detainee at that time.

Plaintiff alleges that on July 18, 2018, he was sitting on his bunk in his cell when he heard movement coming from outside his cell. (Compl. at 5.) Plaintiff alleges he went to his cell door and saw C.O. Walker, C.O. Whiteside and Sgt. Hawkins step out of the control room onto the block. Believing it may be time for a mandatory cell search, Plaintiff alleges he returned to his bunk to wait his turn for his cell to be searched. He claims moments later the officers entered his cell and he heard C.O. Walker say "come on, let's see what you got for us!" while waving his hand in a challenging motion. (*Id.*) Plaintiff alleges that he sensed something "wasn't right" when he saw all three officers at his door because one officer is supposed to remain in the control room. (*Id.*) He alleges that while he was trying to put his shoes on, all three officers entered his cell and he felt a hand grasp the back of his neck tightly. Plaintiff then stood up, pushed the arm of the hand grasping him, and a tussle ensued with the officers. Plaintiff claims he ended up on the floor with all three officers on top of him.

Plaintiff alleges C.O. Walker straddled him and pushed his forearm and elbow into Plaintiff's throat, making it difficult for him to breathe. (*Id.* at 6.) Plaintiff alleges he felt a sharp pain in his right arm and saw C.O. Whiteside bending his arm backwards. Plaintiff then tried to free his arm by pulling away. (*Id.*) Plaintiff alleges C.O. Walker directed him to roll over, which he was not able to do because C.O. Walker was straddling his chest. He alleges he heard someone yell "grab his dick Whiteside, that'll make him roll over" and felt someone grasp his penis and pull it sideways, causing excruciating pain. (*Id.*) Plaintiff was ultimately handcuffed, lifted to his feet, placed in a restraint position, and forced out of his cell. He alleges he was forced back into his cell but "stopped by [his] restraint." (*Id.*) Plaintiff claims that his feet were kicked out from under him, causing his head to hit the bottom of his bunk, then the floor. Plaintiff alleges the officers thereafter uncuffed him and left his cell. He alleges that the use of

force was entirely unprovoked, that he never resisted the officers or refused any orders since "none was [sic] given." (*Id.*) Plaintiff alleges he was taken to the medical department and treated for his injuries – lacerations to his forehead and the corner of his right eye. (*Id.* at 4.)

## III. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

## IV. DISCUSSION

### A. Excessive Force Claim

Plaintiff alleges that Defendants used excessive force against him. Because Plaintiff was a pretrial detainee at the time of the incident in question, his excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S.Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). To demonstrate a due process violation, a detainee must prove that "the force purposely or knowingly used against him was objectively unreasonable," meaning "that the actions [were] not 'rationally related to a legitimate nonpunitive governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). In evaluating whether an officer used "objectively unreasonable" force, courts consider the *Kingsley* factors: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*).

Defendants argue that Plaintiff "misrepresents the facts leading up to the officers entering his cell on the [Restricted Housing Unit] and makes only a passing reference to the reason the [Cell Extraction Unit] was activated." ECF No. 15, p. 6. Defendants allege that prior to the mandatory cell searches, Plaintiff had covered his cell window with wet toilet paper and used one of the mattresses to obstruct the officers' access to the cell flap to handcuff him. *Id*. Defendants allege that Plaintiff refused multiple direct orders to remove the mattress and place

himself on the floor, and that he then flooded his cell with water. *Id*. Defendants allege that when they finally entered Plaintiff's cell, he continued to resist the officers and refuse their orders, causing the need to subdue and restrain him. *Id.* at p. 7. Defendants also provided incident reports, officer logs and other papers relevant to the July 15, 2018, incident to refute Plaintiff's allegations. See *id*., Exh. A. Defendants argue that when reviewing the totality of the circumstances, the amount of force used by them was reasonable and applied in good faith to gain control over Plaintiff.

Although Defendants' allegations regarding Plaintiff's conduct prior to the cell search may ultimately result in a finding that Defendants used objectively reasonable force, they do not support dismissing Plaintiff's excessive force claim at this stage of the proceedings. Plaintiff's Complaint alleges numerous acts of force employed by the officers that, when taken as true and construed liberally, are sufficient to elevate Plaintiff's claim past the level of mere speculation. It would be more appropriate to resolve Defendants' arguments regarding the objective reasonableness of the force used after discovery, once all the facts of the matter have been developed. Accordingly, Defendants' motion is denied as to the excessive force claims.

**B. Sexual Abuse Claim**

Plaintiff also alleges that during the incident, one of the Defendants grabbed his penis and pulled him sideways, causing pain. Compl. at p. 6. A sexual abuse claim such as this is evaluated similarly to an excessive force claim in that the prisoner must allege facts that plausibly show that the force knowingly used against him was objectively unreasonable. *Ricks v. Shover*, 891 F.3d 468, 475 (3d Cir. 2017). Taking Plaintiff's allegations as true, as the Court is obligated to do at this stage of the proceedings, Plaintiff has pled a basis for a plausible claim against Defendants for sexual abuse. This claim also will benefit from the development of a complete

factual record in order to assess the reasonableness of Defendants' alleged action. Accordingly, Defendants' motion is denied, and Plaintiff will be permitted to proceed on his sexual abuse claim at this time.

V.      **CONCLUSION**

For all of the foregoing reasons, Defendants' motion to dismiss is denied.